UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

PATRICIA ANN SCOTT HOLLOWAY        )
ADKINS, *ET AL.,*                  )
        Plaintiffs,            )
                               )
v.                                 )        NO. 2:11-CV-173
                               )
CHEVRON CORPORATION, *ET AL.*,     )
        Defendants.            )

## MEMORANDUM OPINION AND ORDER

This is a putative class action lawsuit brought by 143 named plaintiffs individually and on

behalf of all others similarly situated for personal injury and/or property damage which arise from

allegations of releases of radioactive, hazardous and toxic substances from a nuclear fuel processing

facility (the "facility") into the surrounding environment since the facility began to operate in Erwin,

Tennessee in 1957. The action arises under the Atomic Energy Act, 42 U.S.C. § § 2011, *et seq.*, and

the Price-Anderson Act, 42 U.S.C. § 2210, *et seq*.

Currently pending before the Court are three motions: (1) the motion of NFS Holdings, Inc.,

individually and as Successor-in-interest to Nuclear Fuel Services, Inc., NOG-ERWIN Holdings,

Inc., individually and as Successor-in-interest to Nuclear Fuel Services, Inc., Babcock & Wilcox

Power Generation Group, Inc., individually and as Successor-in-interest to Babcock & Wilcox

Company, B&W Technical Services Group, Inc. f/k/a Nuclear Environmental Services, Inc., Nuclear

Fuel Services, Inc., The Babcock & Wilcox Company and NFS-Radiation Protection Systems, Inc.[1]

---

[1] NFS-Radiation Protection Systems, Inc. was voluntarily dismissed by plaintiffs on January 27, 2011, [Doc. 96].

("NFS Defendants") to dismiss plaintiffs' first amended complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), [Doc. 77]; (2) Chevron Corporation's ("Chevron") motion to dismiss plaintiffs' first amended complaint for lack of personal jurisdiction and failure to state a claim for relief under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), [Doc. 76]; and (3) plaintiffs' second motion to amend their complaint, [Doc. 105].

More specifically, the NFS Defendants claim that plaintiffs' state law claims are preempted by the Price-Anderson Act, that plaintiffs' public liability action under the Price-Anderson Act fails because plaintiffs do not allege any violation of the applicable federal duty of care, that plaintiffs fail to plead their causes of action with specific factual detail to meet the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and that plaintiffs' class allegations are facially deficient because the alleged class is an improper fail-safe class. Chevron alleges that it does not have sufficient contacts with the state of Tennessee to allow the Court to exercise personal jurisdiction over Chevron, that plaintiffs have not alleged a cognizable legal theory which would make Chevron liable as Successor-in-interest to Texaco, Inc., Getty Oil Company and Skelly Oil Company, makes the same arguments as the NFS Defendants that plaintiffs have failed to state a claim under the Price-Anderson Act or to plead a viable tort theory sufficient to satisfy the requirements of *Twombly* and *Iqbal*, and that plaintiffs' class allegations are deficient as a matter of law. Responses and replies have been filed and all motions are now ripe for disposition. Oral argument was heard on June 28, 2012. For the reasons which follow, the motions to dismiss will be GRANTED IN PART and plaintiffs' complaint will be DISMISSED. Plaintiffs' second motion to amend their complaint will be DENIED.

2

# I. Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "[T]o survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* The plausibility standard is not equivalent to a "'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*(quoting *Twombly*, 550 U.S. at 556).

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of cases for lack of personal jurisdiction over the defendant. In considering a properly supported motion to dismiss for lack of personal jurisdiction, a district court has discretion to either decide the motion upon the affidavits alone, permit discovery in aid of deciding the motion, or conduct an evidentiary hearing to resolve any apparent factual questions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). A plaintiff bears the burden of establishing the existence of personal jurisdiction. *Estate of Thomson v. Toyota Motor*

*Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citing *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006)).

However, where a Rule 12(b)(2) motion is decided solely on written submissions and affidavits, the plaintiffs' burden "is relatively slight," *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal," *Theunissen* 935 F.2d at 1458. Indeed, "the pleadings and affidavits submitted . . . are received in a light most favorable to the plaintiff," *id.* at 1459, and the court "should not weigh the controverting assertions of the party seeking dismissal." *Thomson*, 545 F.3d at 361 (citing *Theunissen*, 935 F.2d at 1459). This Rule is in place because the United States Court of Appeals for the Sixth Circuit has stated that it wants "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen*, 935 F.2d at 1459.

## II. Facts and Procedural Background

Plaintiffs' complaint, [Doc. 1], was filed on June 13, 2011. With the agreement of defendants, a First Amended Complaint was filed on October 14, 2011, [Docs. 64, 68]. Defendants responded to the complaint with the instant motions to dismiss. After the motions were fully briefed, plaintiffs filed a second motion to amend/revise their complaint, [Doc. 105], and defendants responded in opposition to the motion to amend, [Doc. 107]. On June 14, 2012, the Magistrate Judge entered an order deferring a ruling on the motion to amend until the instant dispositive motions were ruled upon, [Doc. 108].

4

Plaintiffs are 143 persons/organizations[2] who lived near, worked at, or owned property in close proximity to, the facility who claim to have suffered severe personal or physical injury, pain, suffering, and mental and emotional damage from such illnesses as cancer, lung disease, heart attack, tumors and various other conditions and property damage from "repeated releases of hazardous and radioactive substances into the area surrounding the [f]acility." Many plaintiffs also claim the death of family members related to the releases. These plaintiffs propose to represent a class of "all persons who lived, resided, or owned real property in Erwin, Tennessee, or any area that was contaminated by emissions from the [f]acility, who have suffered personal injury or death and/or substantial property damage as a result of Defendants' conduct . . ."

The following facts, taken as true for the purpose of deciding the instant motions to dismiss, are taken from the first amended complaint:

Nuclear Fuel Services, Inc. ("NFS") was formed in 1957 to develop one of the nation's first privately owned commercial nuclear processing facilities. The facility has continuously been located at the same location in Erwin, Tennessee since that time. Enriched uranium, thorium and plutonium have been processed, pelletized, and loaded into fuel rods or cylinders to be used as nuclear fuel by both government and commercial customers. Certain waste treatment and disposal activities, including radioactive waste incineration and use of retention ponds, also occurred at the facility.

The operations of the facility have generated significant amounts of substances that are toxic to humans and the environment and are carcinogenic. Throughout the history of the facility, there

_____

[2] One plaintiff, the Erwin Citizens Awareness Network, Inc., a non-profit organization, the mission of which "is to research and investigate issues involving the nuclear industry that it believes adversely affects health, safety and environment," was voluntarily dismissed on November 16, 2011, [Doc. 95].

have been recurrent releases of radioactive and toxic materials into the environment, including discharge of radioactive and toxic material into public waters, emissions from facility stacks, exposure of workers, and leakage from storage tanks and disposal systems. Plaintiffs contend that the facility "was never operated in compliance with applicable state, local and federal laws." The facility has routinely exceeded federal stack emissions and violated Tennessee regulations governing disposal of waste into surface water bodies. Defendants were aware of the risks posed by these releases and withheld information about the danger from plaintiffs and the community. Because of the withholding of information from the public, plaintiffs did not learn of the cause of their injuries until late 2010, when Dr. Michael Ketterer of Northern Arizona University published a report documenting radioactive contamination emanating from the facility.

Plaintiffs assert 11 causes of action, including a public liability action under the Price-Anderson Act (Count 1) and ten claims under Tennessee State law. The state law claims are for negligence (Count 2), negligence per se (Count 3), absolute or strict liability (Count 4), private nuisance (Count 5), trespass (Count 6), wrongful death (Count 7), intentional infliction of emotional distress (Count 8), reckless infliction of emotional distress (Count 9), negligent infliction of emotional distress (Count 10), and loss of consortium (Count 11). Plaintiffs seek both compensatory and punitive damages and attorneys' fees.

The following additional facts are alleged in plaintiffs' proposed second amended complaint:

Five types of non-compliance issues have been documented at the facility between May 24, 1962, and June 21, 2010: (1) Material control and accountability issues; (2) criticality safety controls and related issues; (3) license violations; (4) NRC enforcement actions; and (5) falsification of documents. These specific instances of "non-compliance" are set out in an 86 page Exhibit A to the

second amended complaint.

## III.  Analysis

### A.  Statutory Framework

Congress initiated regulation of nuclear power when it passed the Atomic Energy Act of 1946, Act of Aug. 1, 1946, ch. 724, 60 Stat. 755, by establishing a federal monopoly over the development of nuclear power. *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 63 (1978) ("When Congress passed the Atomic Energy Act of 1946, it contemplated that the development of nuclear power would be a government monopoly.").  Congress later permitted private sector involvement with passage of the Atomic Energy Act of 1954, Act of Aug. 30, 1954, ch. 1073, 68 Stat. 919.  The 1954 Act provided for "licensing of private construction, ownership, and operation of commercial nuclear power reactors for energy production," *id.,* and "grew out of Congress' determination that the national interest would be best served if the Government encouraged the private sector to become involved in the development of atomic energy for peaceful purposes under a program of federal regulation and licensing." *Pacific Gas and Electric Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 207 (1983) (citing *H.R. Rep. No. 2181*, 83d Cong., 2d Sess., 1-11 (1954)).

Nevertheless, private utilities were reluctant to enter the field, largely because of "the risk of potentially vast liability in the event of a nuclear accident." *See Duke Power*, 438 U.S. at 64 (discussing that enormous potential liability is associated with nuclear accidents.)  To address that concern, Congress enacted the Price-Anderson Act of 1957 "to protect the public and to encourage the development of the atomic energy industry." Pub. L. No. 85-256, § 1, 71 Stat. 576 (1957).  The Act limited the civil liability of nuclear plant operators and provided federal funds to help pay

damages caused by nuclear accidents.  *Id.*  The Price-Anderson Act has been amended three times, most notably in 1988.  The 1988 amendments created federal jurisdiction for public liability actions arising from nuclear incidents.  42 U.S.C. § 2014 (hh).  A "public liability action" is defined as "any suit asserting public liability" based upon alleged exposure to "source, special nuclear, or byproduct material."  42 U.S.C. § 2014(hh), (q).  "Public liability" is defined, in part, as "any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation . . ."  42 U.S.C. § 2014(w).

A "nuclear incident" is "any occurrence, . . . within the United States causing, within or without the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, . . . arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material . . . ."  42 U.S.C. § 2014(q).  Section 2014(hh) provides that "the substantive rules for decision of [a public liability] action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of section [2210]."  42 U.S.C. § 2014(hh).

## B. Preemption of State Law Claims (Counts 2 through 11) Under the Price-Anderson Act

All defendants argue that plaintiffs' state law claims (Counts 2 through 11) must be dismissed because the Price-Anderson Act completely preempts state law causes of action for public liability arising out of or resulting from nuclear incidents and, thus, Counts 2 though 11 cannot proceed as separate causes of action.  Defendants rely primarily upon cases decided by the Third, Sixth and Seventh Circuits.  Plaintiffs respond that defendants' argument "relies on a misreading of 42 U.S.C. § 2014(hh)" and that those courts which have held that state law is preempted by the

Price-Anderson Act "have erred in interpreting the last clause of § 2014(hh) . . ." On this issue, the Court is constrained to agree with defendants on the basis of clearly stated Sixth Circuit precedent, which this Court must apply.

The Price-Anderson Act does not explicitly address the issue of preemption. The Sixth Circuit has, however, squarely addressed the question. In *Nieman v. NLO*, 108 F.3d 1546 (6th Cir. 1997), the plaintiff asserted various state law claims premised upon his allegations that a discharge of uranium from a nuclear processing facility in Fernald, Ohio had damaged his property. In affirming the district court's dismissal of plaintiff's state law trespass action, the Sixth Circuit noted that the Price-Anderson Act had not merely created a new federal cause of action, *i.e.* a public liability action, but that "a new federal cause of action supplants the prior state cause of action." *Id.* at 1549 (quoting *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1100 (7th Cir.), *cert denied*, 512 U.S. 1222 (1994)). After extensive discussion of Supreme Court and other circuit's preemption pronouncements, the Sixth Circuit held:

> Because the Price-Anderson Act, as amended in 1988, specifically dictates that state law applies only to the extent it is not inconsistent with federal law and because we agree with the analyses of preemption in *O'Conner* and *TMI II*, we hold that the Price-Anderson Act preempts Nieman's state law claims; the state law claims **cannot stand as separate causes of action**. Nieman can sue under the Price-Anderson Act, as amended, or not at all.

*Id.* at 1553 (emphasis added).

District Courts in the Sixth Circuit, including this Court, have followed and applied *Nieman* in holding that the Price-Anderson Act completely preempts state law causes of action for public liability arising out of or resulting from nuclear incidents. *See Irwin v. CSX Transportation, Inc.*, 2011 WL 976376 (E.D. Tenn. Mar. 16, 2011) (Jordan, J.) ("After the 1998 amendments, if a public

9

liability action is involved, the P[rice] A[nderson] A[ct] applies, and 'there can be no action for injuries caused by the release of radiation from federally licensed nuclear power plants separate and apart from the [public liability action]).'" (citation omitted); *see also Smith v. Carbide and Chems. Corp.*, 298 F.Supp.2d 561, 565 (W.D. Ky. 2004), rev'd on other grounds, 507 F.3d 372 (6th Cir. 2007).

Furthermore, every other federal circuit to consider the question has decided consistently with the Sixth Circuit. *See In re Berg Litig.*, 293 F.3d 1127, 1132 (9th Cir. 2002) (public liability action is plaintiff's "exclusive means" for pursuing claims arising from a nuclear incident); *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1306 (11th Cir. 1998) ("Congress passed the Price-Anderson Amendments Act of 1988 . . . creating an exclusive federal cause of action for radiation injury."); *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir. 1997) (The Act's provisions "appear broad enough to create a federal forum for any tort claim even remotely involving atomic energy production. The P[rice]-A[nderson] A[ct] on its face provides the sole remedy for the torts alleged . . ."); *O'Conner*, 13 F.3d at 1100, 1105 ("a new federal cause of action supplants the prior state cause of action . . . . [S]tate regulation of nuclear safety, through either legislation or negligence actions, is preempted by federal law."); *In Re TMI Litig. Cases Consol. II*, 940 F.2d 832, 854 (3d Cir. 1991) (*TMI II*) ("After the Amendments Act, no state cause of action based upon public liability exists. A claim growing out of any nuclear incident is compensable under the terms of the Amendments Act or *it is not compensable at all*.") (emphasis in original).

Notwithstanding plaintiffs' arguments, this Court cannot ignore the clear language of the Sixth Circuit in *Nieman* that "the state law causes of action cannot stand as separate causes of action," *Neiman*, 108 F.3d at 1553, and the state law claims must be dismissed. Any argument that

the Sixth Circuit has "erred" in its interpretation of the Price-Anderson Act is more appropriately made to the Sixth Circuit. This Court, as a district court sitting in the Sixth Circuit, is bound to apply Sixth Circuit precedent.

Counts 2 through 11 will be dismissed.

### C.     Essential Elements of a Public Liability Action

The Court now turns its attention to the sole remaining claim in the plaintiffs' complaint, the public liability action, and confronts a very straightforward question–do the federally imposed dose limits establish the standard of care applicable to a public liability action? In other words, to maintain a public liability action under the Price-Anderson Act, must plaintiffs plead and prove a breach of the relevant federal dose limits applicable to a nuclear incident? Plaintiffs concede that they do not plead, and cannot prove, such a breach.

Defendants argue that this failure is fatal to plaintiffs' complaint, arguing that "the overwhelming weight of authority holds that 'federal regulatory standards preempt state statutory or common-law standards in Price-Anderson public liability actions.'" [Chevron's Memorandum, Doc. 78 at 15] (citing *Smith v. Carbide & Chems. Corp.*, 2009 WL 3007127 (W.D. Ky. Sept. 16, 2009)). The standard of care owed by the defendants to plaintiffs, defendants argue, is determined by the relevant federal nuclear safety regulations, citing *TNS, Inc. v. NLRB*, 296 F.3d 384, 398 (6th Cir. 2002). Plaintiffs, on the other hand, argue that state law standards of care apply in public liability actions, asserting that the Sixth Circuit language from *TNS* relied on by defendants is "purely dicta" and authority from other circuits cited by defendants is non-binding in this Court. At oral argument, plaintiffs relied primarily on *Cook v. Rockwell International*, 755 F.Supp.1468 (D. Colo. 1991) and *In re Hanford Nuclear Reservation Litig.*, 780 F.Supp. 1551 (E.D. Wash. 1991),

11

in support of their position. [3]

On this issue, too, the Court is constrained to agree with defendants, and holds that in order to prevail on their public liability claim, plaintiffs must plead and prove a breach of the federal numerical dose limits. Plaintiffs here cannot do so and an essential element of their claim is missing. As a result, Count 1 must also be dismissed.

In 1957, the Atomic Energy Commission ("AEC") issued regulations "to establish standards for the protection of [nuclear plant] licensees, their employees and the general public against radiation hazards." 25 Fed. Reg. 8595, 8595 (1960). In 1960, the regulations were substantially revised by the AEC, and in 1991 the Nuclear Regulatory Commission (NRC), the statutory successor to the AEC, issued new regulations on radiation dose limits. The permissible dose limits are found at 10 CFR § 20.1301 ("Dose limits for individual members of the public") and at 10 CFR § 20.1201 ("Occupational dose limits for adults"). "Recommended limits on exposure, based upon extensive scientific and technical investigation and upon years of experience with the practical

_____

[3] Plaintiffs also appears to rely on *Rainer v. Union Carbide Corp.*, 402 F.3d 608 (6th Cir. 2005) in support of their position that there is no requirement that plaintiffs allege exceedances of federal dose limits. Plaintiffs, in fact, argue that *Rainer* is dispositive on the question. The Court disagrees. As far as this Court can tell, *Rainer* did not address the applicable standard of care.

It is true, as the Sixth Circuit has noted, that the Price-Anderson Act was "not intended to alter the state law nature of the underlying tort claims" and that "the substantive rules for decision . . . shall be derived from the State in which the nuclear incident occurs, unless such law is inconsistent with the provisions" of the Act. *Id.* at 617 (quoting *Day v. NLO, Inc.*, 3 F.3d 153, 154 n.1 (6th Cir. 1993)) (citations omitted). If, as plaintiffs seem to argue, the Court simply looks to state law to determine the elements of their tort claims, the Price-Anderson Act is really nothing more than a statute which requires claims such as this to be tried in federal court, not state court.

The plaintiffs also cite *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984), in support of their argument that state law applies to nuclear regulation. In *Silkwood*, the Supreme Court concluded punitive damages could be awarded against the operator of a nuclear facility because under the then-existing statutory scheme, Congress intended to permit any tort remedies under the applicable state law. *Id.* at 256. *Silkwood*, however, pre-dates the 1988 amendments and was filed a decade before the creation of the public liability action. Furthermore, Silkwood's exposure to radiation exceeded the amount permitted by then-existing federal regulations by two and one-half times. *See Silkwood v. Kerr-McGee Corp.*, 485 F.Supp. 566, 583 (W.D. Okla. 1979). *See also, Nieman*, 108 F.3d at 1552 (noting that there is no Supreme Court precedent directly on point because the Supreme Court has not had an occasion to address § 2014(hh) since the 1988 amendment "which clarified the relationship between state and federal law . . .").

12

problems of radiation protection, represent a consensus as to the measures generally desirable to provide appropriate degrees of safety in the situations to which these measures apply" and are "conservative standard[s]." *In re TMI*, 67 F.3d 1103, 1111 (3d Cir. 1995) (*TMI I*).

So far as this Court can tell, every circuit court of appeals to address the question raised has held that the plaintiff must prove a dose in excess of the federal permissible dose limits in order to show a breach of duty in a public liability action under the Price-Anderson Act. The first circuit to address the question head on was the Third in *TMI II*, a case arising out of the 1979 incident at the Three Mile Island Nuclear Facility near Harrisburg, Pennsylvania. Relying on two Supreme Court cases, *Pacific Gas & Elec.* and *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984), the Third Circuit held that the duty defendants owe the plaintiffs in tort is dictated by federal law. *TMI II*, 940 F.2d at 858. "[S]tates are preempted from imposing a non-federal duty in tort, because any state duty would infringe upon pervasive federal regulation in the field of nuclear safety, and thus would conflict with federal law." *Id.* at 859 (citing *Pacific Gas & Electric*, 461 U.S. at 204). In the second case from the Third Circuit also arising from the Three Mile Island incident, the Third Circuit forcefully reaffirmed that "*TMI II* definitively resolved the issue whether federal law preempts state tort law on the standard of care." *TMI I,* 67F.3d at 1107 (holding that the federal dose limit regulations "constitute the federal standard of care" in a public liability action under the Price-Anderson Act and rejecting an argument that ALARA is part of the duty of care) (see below) .

In 1994, the Seventh Circuit weighed in. In *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir. 1994), a nuclear power plant worker sued for negligent exposure to radiation in an Illinois state court and the case was removed to federal court. The district court held that maximum permissible radiation dose levels set by federal safety standards established the duty of

care for radiation injuries and granted summary judgment. The Seventh Circuit affirmed, also relying on *Pacific Gas & Electric* and *Silkwood*, agreed with the Third Circuit in holding that "federal regulations must provide the sole measure of the defendants' duty in a public liability cause of action," and that imposing a non-federal duty would conflict with federal law. *Id*. at 1105, (citing *TMI II*, 940 F.2d at 859). The Eleventh, Ninth, and Tenth have now all followed suit. *See Roberts v. Florida Power & Light Co.*, 146 F.3d 1305 (11th Cir. 1998) (in tort action alleging development of leukemia as a result of exposure to radiation at nuclear power plant, holding "that federal safety regulations conclusively establish the duty of care owed in a public liability action" and dismissing negligence, strict liability and loss of consortium claims because plaintiffs fail to allege a breach of the duty of care based on exposure "to an amount of radiation in excess of the maximum permissible amount allowed by federal regulation . . ."); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986 (9th Cir. 2008) (rejecting argument that application of a state's reasonableness standard of care applied rather than standard of care expressed in federal nuclear safety regulations); *Cook v. Rockwell International Corp.*, 618 F.3d 1127 (10th Cir. 2010) ("The court is sympathetic to defendant's generic argument that directing a nuclear facility to comply with federal safety regulations, while also permitting tort recovery under a generic state tort standard of care . . . . could defeat one of the PAA's primary purposes . . ." but remanding to allow the district court to identify the relevant federal regulations or statutes).

The Sixth Circuit has also joined the fray, although less directly than other circuits. In *Nieman*, a case factually on point, the Sixth Circuit cited with apparent approval the holdings of the Third Circuit in both *TMI I* and *TMI II*:

> . . . The court also stated that "states are preempted from imposing a non-federal duty in tort, because any state duty would

14

> infringe upon pervasive federal regulation in the field of nuclear safety, and thus would conflict with federal law." *[TMI II]* at 859; *see also TMI[I]*, 67 F.3d at 1106 (affirming the district court's determination that federal law determines the standard of care and preempts state tort law).

*Nieman*, 108 F.3d at 1553. The Sixth Circuit has also referred to its *Nieman* holding in *TNS,* a case not arising from a nuclear incident, where the court characterized its holding in *Nieman* as "join[ing] with almost every other circuit in holding that NRC safety regulations conclusively establish the duty of care owed by defendants in radiation safety personal injury cases governed by the 1998 amendments to the Price-Anderson Act." *Id*. at 398 (citing *Nieman*, 108 F.3d at 1552-53). While these Sixth Circuit cases are not directly dispositive of the precise question before the Court, they do indicate that the Sixth Circuit would likely join the overwhelming majority of the federal circuits and hold that the federal dose limits set the standard of care in a public liability action.

District court decisions are just as overwhelming on the issue of whether an essential element of a public liability action is that the plaintiff's exposure exceeded the federal dose limits. *See, e.g.*, *Smith v. Carbide & Chems. Corp.*, 2009 WL 3007127 (W.D. Ky. Sept. 16, 2009); *Koller v. Pinnacle West Capital Corp.*, 2007 WL 446357 (D. Ariz. Feb. 6, 2007) (concluding that the standard of care in a negligence claim under the Price-Anderson Act "must be analyzed in the context of federal regulatory safety standards."*); Devine v. Commonwealth Edison Co.*, 2006 WL 2038593, at * 2-3 (N.D. Ill. July 19, 2006); *O'Connor v. Boeing North American, Inc.,* 2005 WL 6035255 (C. D.Ca. August 18, 2005); *Good v. Fluor Daniel Corp*., 222 F.Supp.2d 1236, 1247 (E.D. Wash. 2002) ("In order to prevail on a PLA claim, these plaintiffs must demonstrate, *inter alia*, that they were exposed to radiation in excess of the maximums established by the federal safety regulations."); *Lokos v. Detroit Edison*, 67 F.Supp.2d 740, 743 (E.D. Mich. 1999) ("To prevail in their PLA,

plaintiffs must prove two essential elements: (1) Mrs. Lokos' exposure exceeded the federal numerical dose limits; and (2) such overexposure caused her to suffer a compensable injury under the Amendments Act."); *Carey v. Kerr-McGee Chem. Corp.*, 60 F.Supp.2d 800, 807-08 (N.D. Ill. 1999) (NRC regulations provide the standard of care to be applied in a public liability action); *Gassie v. SMH Swiss Corp.*, 1998 WL 158737, at *4-5 (E.D. La. Mar. 26, 1998) (dismissing claims for failure to plead a violation of federal dose limits); *Bohrmann v. Maine Yankee Atomic Power Co.*, 926 F.Supp. 211, 216 (D. Me. 1996); *Corcoran v. New York Power Authority*, 935 F.Supp. 376, 387 (S.D. N.Y. 1996) (holding that plaintiff must plead and establish a breach of the federal dose limits); *O'Conner v. Commonwealth Edison Co.*, 807 F.Supp. 1376, 1378 (C.D. Ill. 1992) (holding that one of the relevant issues in a PLA is "whether the duty owed was breached" as determined by federal dose limits). [4]

Plaintiffs do make one other argument that needs to be addressed. At oral argument, plaintiffs' counsel argued that even if the relevant standard of care comes from federal law, plaintiffs established the relevant duty by reference to a number of federal regulations cited in their complaint, *i.e.*, 10 CFR 20.103, 104, 105, 106, 201, 203, 206, 401, which counsel referred to at oral argument as "the ALARA standard or the point of stack release." (Tr. Proc., Doc. 111, pp. 62-65). Plaintiffs'

---

[4] As noted above, plaintiffs rely on two district court cases in support of their position that they do not need to plead or prove a violation of federal dose limits in order to maintain their public liability action. *See Cook v. Rockwell International, Corp.*, 755 F.Supp.2d 1468 (D. Colo. 1991), *Cook v. Rockwell International, Corp.*, 273 F.Supp.2d 1175 (D. Colo. 2003) , *Cook v. Rockwell International*,564 F.Supp.2d 1175 (D. Colo. 2003), *Cook v. Rockwell International, Corp.*, 564 F.Supp.2d 1189 (D. Colo. 2008). Both of these decisions are contrary, however, to decisions by their respective circuits. The district court in *Cook* was ultimately reversed by the Tenth Circuit. *Cook v. Rockwell International, Corp.*, 618 F.3d 1127 (10th Cir. 2010), *cert. denied* 133 S.Ct. 22 (Jun. 25, 2012). Plaintiffs also rely on various rulings by the District Court for the Eastern District of Washington in litigation arising from the operation of the Hanford Nuclear Weapons Reservation in Southeastern, Washington. The Ninth Circuit has now made its position clear, however. *See In re Hanford Nuclear Reservation Litigation*, 534 F.3d 986, 1003 (9th Cir. 2008) ("Every federal circuit that has considered the appropriate standard of care under the PAA has concluded that nuclear operators are not liable unless they breach federally-imposed dose limits.").

counsel apparently refers to paragraph 48 of plaintiffs' complaint which contains conclusory allegations of "non-compliance" with various "applicable federal, state and local laws and regulations promulgated thereunder." [First Amended Complaint, Doc. 68, ¶ 48]. Interestingly, these regulations and statutes are listed under plaintiffs "COUNT THREE: NEGLIGENCE PER SE", not under "COUNT ONE: CLAIMS ARISING UNDER THE PRICE-ANDERSON ACT." [5]

Plaintiffs have made no effort, either in their brief or at oral argument, to identify any case, and the Court can find none, which even remotely suggests that such conclusory pleading is sufficient to avoid dismissal or that any court has actually applied these statutes or regulations as establishing, in whole or in part, the standard of care in a public liability action.[6]   In fact, so far as this Court knows, every court to address the ALARA[7] standard referred to by plaintiffs has rejected it as the standard of care in a public liability action.  *See, e.g., TMI I*; *Corcoran*, 935 F.Supp. at 389; *McLandrich v. Southern California Edison*, 942 F.Supp. 457, 467 (S.D. Cal. July 29, 1996); *Bohrmann*, 926 F.Supp. at 220.  Even if some federal safety regulation other than the regulations dealing with numeric dose limits could form the basis of a public liability action, as plaintiffs argue, plaintiffs' complaint must be dismissed under the *Twombly/Iqbal* pleading standards now in effect.

---

[5]  As noted above, plaintiffs propose to amend their complaint for a second time.  The most significant change in the proposed second amended complaint is the addition of an 86 page chart, Exhibit A, which they characterize as documenting a "long history of non-compliance, violations of federal standards, lack of adequate safety controls and toxic discharges" since 1962.  They concede, however, that none of these alleged incidents of "non-compliance" involved exceedence of the dose limits.  They also do not identify any of these incidents of "non-compliance" as involving a "nuclear incident," a prerequisite to the maintenance of a public liability action under the Price-Anderson Act.

[6]  The Court notes that the regulations related to the relevant dose limits do not appear to be listed among the regulations set forth in ¶ 48 of plaintiffs' First Amended Complaint and the plaintiffs conceded at oral argument, as noted above, that they do not plead, and cannot prove, a violation of the permissible dose limits.

[7]  ALARA is generally defined as requiring radiation releases to be "as low as reasonably achievable taking into account the state of technology . . ." 10 C.F.R. § 20.1(c).  The term appears in several sections of the Code of Federal Regulations, including § 20.1(c), § 50.34a, and 50.36a.  *TMI I*, 67 F.3d at 1106 n.6.

17

Numerous district courts in the Sixth Circuit, including this Court, have routinely dismissed plaintiffs' claims where they failed to plead sufficient facts to establish an element of their claim and the Sixth Circuit has generally affirmed those decisions. As noted above, *Twombly* and *Iqbal* require more than legal conclusions "couched as a factual allegation," *Twombly*, 550 U.S. at 555. Although plaintiffs allege in a general sense the violation of federal safety standards, they do not identify the specific applicable standard of care which they allege applies. Furthermore, they totally fail to provide any factual allegations which would support their allegation of the breach of an applicable federal safety standard. Their conclusory statements, masquerading as factual allegations, are not sufficient. In addition, their proposed second amended complaint does not cure these pleading deficiencies. Even if the Court were to permit the second amended complaint, it fares no better under *Twombly* and *Iqbal*. Although plaintiffs include in their second amended complaint the 86 page chart of "non-compliance" by defendants over the last 50 years, they do not show how any of these acts of "non-compliance" have violated any of the statutes and regulations identified by plaintiffs. Indeed, plaintiffs appear in their pleading to acknowledge as much, referring to the "non-compliance" issues as being of five types, only one of which appears to be safety related.

Plaintiffs also appeared to admit as much at oral argument, making reference to their conclusory claims in the first amended complaint "that there were numerous stack violations, numerous aerial violations" and referring to the 86 page list of "non-compliance" in the second amended complaint. [Tr. Proc., Doc. 111, p. 63]. As noted above, however, neither the first amended complaint nor the second amended complaint point to any violation in the "non-compliance" list which they specifically allege constitutes a violation of any federal nuclear safety regulation. Counsel specifically acknowledged that discovery was needed in order for plaintiffs to

18

discover facts allowing them to plausibly plead a violation of federal safety regulations, stating that " when time comes through discovery and time comes for trial, we will be able to meet whatever burden that the law places on us as part of our proof."   Unfortunately for plaintiffs, however, they may not rely on discovery to identify facts from which to plausibly plead a cause of action.  *See Iqbal*, 129 S.Ct. at 1954 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise.").  *See also New Albany Tractor Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1053 (6th Cir. 2011) ("Without discovery, the plaintiff may have no way to find out the facts . . ., but *Iqbal* specifically orders courts . . . to refuse to order further discovery.").

### D.    Does This Court Lack Personal Jurisdiction Over Chevron?

Although it is not necessary for the Court to address Chevron's claims that the Court lacks personal jurisdiction over it given its grant of the Rule 12(b)(6) motions, the Court will nevertheless address the issue briefly.     Plaintiffs' first amended complaint makes the following specific allegations regarding Chevron:

> Chevron Corporation is a Delaware company with its principal place of business in California. Chevron Corporation is being sued individually and as successor-in-interest to Getty Oil Company, Skelly Oil Company, Texaco, Inc., and Nuclear Fuel Services, Inc. Upon information and belief, Chevron's predecessors Getty Oil, Skelly Oil and Texaco, Inc. exercised ownership and operational control over Nuclear Fuel Services, Inc. from 1969 through 1986. During all times relevant hereto, Defendant Chevron Corporation did business in the state of Tennessee.

[Doc. 68, ¶ 8 B.3.].  The first amended complaint further alleges that:

> . . . each Defendant corporation, by itself or through its agents, is or has been engaged in the business of transporting, generating, processing, using, releasing, sale and distribution, and disposal of nuclear materials at the Facility located in Erwin, Tennessee. Such

Facility is, or was at times material hereto, owned by these Defendants or by their agents.

[Doc. Id., ¶ 9].  Various other allegations are made throughout the complaint with respect to the conduct of "Defendants" without specific allegations related to Chevron or any other individual defendant specifically.  *See, e.g.*, ¶¶ 1, 10, 11, 30-32, 36, 41-45, 50, 53-56, 58-61, 64-65, 67, 70-71, 73-74, 76, 80-82.

Both plaintiffs and Chevron have committed a significant amount of ink and pages of their briefs to this question and have analyzed it under traditional due process principles as to whether or not Chevron has the necessary minimum contacts with the state of Tennessee  that this Court's exercise of personal jurisdiction over Chevron is compatible with due process requirements of the United States Constitution.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)*; Int'l Techs Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997).  And, were the Court to analyze the issue applying those principles, it would likely conclude that plaintiffs have not met their burden of establishing a *prima facie* case that personal jurisdiction exists.  *See Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 & n.3 (6th Cir. 2006); *Theunissen*, 935 F.2d at 1458.

The Court, however, does not analyze the issue applying principles applicable if the Court were sitting in diversity.  There is a more straight-forward reason why this federal court has personal jurisdiction over Chevron, regardless of its contacts with the State of Tennessee -- a reason neither plaintiffs nor Chevron addressed in their briefing, although plaintiffs' counsel did touch on it briefly at oral argument.  Counsel argues that 42 U.S.C. § 2210(n)(2) confers both subject matter and personal jurisdiction over Chevron on this Court, arguing specifically that "when federal subject matter jurisdiction is conferred on a court, such as the case here under the Price-Anderson Act, the court is specifically given jurisdiction over the entire country." (Tr. of Proc., Doc. 111, p. 13) The

20

plaintiffs cite no case law support for their position; however, such case law support does arguably exist. Courts, including the Sixth Circuit, have held that where a federal court's subject matter jurisdiction over a case arises as the result of a federal question, the personal jurisdiction analysis depends on whether the federal statute in question contains a national service of process provision. The existence of a national service of process provision "confer[s] personal jurisdiction in any federal district court over any defendant with minimum contacts to the United States." *Medical Mutual of Ohio v. deSoto*, 245 F.3d 561 (6th Cir. 2001) (quoting *United Liberty Lobby Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993)). As the Sixth Circuit explained in *deSoto*,

> . . . the personal jurisdiction requirement restricts judicial power as a matter of individual liberty-- the individual's due process right not to be subject to extra-territorial jurisdiction unless he has a sufficient relationship with the state asserting jurisdiction. When, however, a federal court sitting pursuant to federal question jurisdiction exercises personal jurisdiction over a U. S. citizen or resident based on a congressionally authorized nationwide service of process provision, that individual liberty interest is not threatened. In such cases, the individual is not being subject to extra-territorial jurisdiction, because the individual is within the territory of the sovereign-- the United States-- exercising jurisdiction. In other words, when a federal court exercises jurisdiction pursuant to national service of process provision, it is exercising jurisdiction for the territory of the United States and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States.

245 F.3d at 567-68. *See also United Liberty Life Ins. Co.*, 985 F.2d at 1330; *Haile v. Henderson National Bank*, 657 F.2d 816, 824-26 (6th Cir. 1981).

Plaintiffs invoke the jurisdiction of this Court pursuant to a federal question and 42 U.S.C. § 2210(n)(2) appears to clearly provide for nationwide service of process "effective throughout the United States." Although both plaintiffs and defendant, Chevron, have spent an enormous amount of space in their briefs and time at oral argument to the question of whether or not sufficient contacts

21

exist with the forum state, *i.e.*, Tennessee, it appears the relevant question, which neither of the parties addresses, presumably because it is not in dispute, is whether Chevron has sufficient minimum contacts with the United States for the Court to exercise personal jurisdiction. Thus, it appears that plaintiffs are correct in their assertion that the Court has personal jurisdiction over Chevron because the question presented is a federal one and the statute authorizes nationwide service of process. As a result, the Court would deny Chevron's Rule 12(b)(2) moton.

### E. Plaintiffs' Motion to File a Second Amended Complaint

As set forth above, plaintiffs move for the second time to amend their complaint in this matter. Plaintiffs' motion is jointly opposed by the defendants, [Doc. 107]. As noted, the Magistrate Judge has previously determined that a ruling on the plaintiffs' motion to amend for a second time should be deferred until after the Court's ruling on the dispositive motions which were pending and fully briefed at the time of the filing of the motion. Plaintiffs' motion to amend is now denied, for a very simple reason.

Plaintiffs admit that their proposed second amended complaint does not differ substantially from the first amended complaint and that they seek only to add factual information related to their allegations regarding exposure, causation, and injury. The proposed amendments are largely reflected in the proposed 86-page "Exhibit A." The proposed amendment does not address the claimed deficiencies of the first amendment complaint raised in the defendants' motions to dismiss and would not correct the deficiencies now found by the Court. A proposed amendment is "futile" if the pleading, as amended, would fail a motion to dismiss under Rule 12(b)(6). *Riverview Health Inst. LLC v. Med. Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). The motion to amend is DENIED.

## IV.  CONCLUSION

For the reasons set forth above, the motions to dismiss plaintiffs' state law claims are GRANTED because those claims are preempted by the Price-Anderson Act, defendants' Rule 12(b)(6) motions are GRANTED as to the plaintiffs' Price-Anderson Act claim because plaintiffs do not state a claim upon which relief can be granted and plaintiffs' motion to amend is DENIED. All other claims raised by the defendants' motions are PRETERMITTED.

So ordered.

ENTER:


s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
